## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM LEE MITCHUM, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER M. BLANKENSHIP, | ) | No. 2:22-cv-00615-WKW-SMD |
| in his official capacity as | ) | |
| Commissioner of the Department of | ) | |
| Conservation and Natural Resources, | ) | |
| *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

### DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY INJUNCTION[1]

Plaintiff William Lee Mitchum alleges that his Second Amendment right to bear arms in public has been infringed. But no State law, regulation, or official has barred him from bearing arms in public parks. No facts or law support Plaintiff's request for injunctive relief, and thus, it should be denied.

This case is *not* about whether Alabama State Parks can be constitutionally deemed gun-free zones. The Department of Conservation and Natural Resources did not infringe Plaintiff's Second Amendment right to carry for self-defense. Pursuant

---

[1] It is not clear whether Plaintiff is seeking a temporary restraining order or a preliminary injunction. Given that a TRO would expire before the Department will stop enforcing the permission requirement on January 1, 2023, *see* FED. R. CIV. P. 65(b)(2), and thus would not afford Plaintiff complete relief, Defendants will construe Plaintiff's motion as one seeking a preliminary injunction.

to Ala. Admin. Code r. 220-5-.08(1) ("the Rule")[2] and longstanding policy, the Department told Plaintiff that he could not *open* carry at Alabama State Parks. Had he asked for permission to *concealed* carry a handgun, the Department would have granted it. What this case *is* about is (in the three or so weeks that the Rule continues to be enforced) whether the Department can merely require citizens to cover their weapons when they bear firearms for self-defense at State Parks. The Second Amendment's text and the historical tradition of firearm regulation confirm that it can.

After waiting four months since the events at issue, Plaintiff now seeks a temporary injunction ("the Motion") preventing the State from enforcing the Rule's written-permission requirement. *See* Doc. 19 at 1. But he provides no reason—let alone evidence—for why this Court should grant such extraordinary relief beyond that he "should not be subjected to one more second . . . of unconstitutional infringements[.]" *Id.* at 2. But Plaintiff has not shown that he will be subject to the Rule

---

[2] The Rule provides:

> It shall be unlawful for any person other than a duly authorized law enforcement officer to possess or carry into any State Park any form of firearm without written permission of the manager in charge of the State Park visited; provided, *however, nothing in this regulation prohibits the possession of handguns by lawfully licensed persons for personal protection*, provided, the handguns are not used for any unlawful purpose. No person shall possess, discharge or set off on or within a State Park any firecrackers, torpedoes, rockets, cap pistols, or other fireworks.

ALA. ADMIN. CODE r. 220-5-.08(1) (emphasis added).

anymore—not even for "one more second"—because he hasn't shown that he intends to visit (and carry a firearm for self-defense at) an Alabama State Park in the future.[3] He lacks an impending irreparable injury or standing to seek prospective injunctive relief at all. Even if this Court were to ignore these evidentiary, jurisdictional, and equitable deficiencies, Plaintiff's Second Amendment claim fails on the merits. A regulation prohibiting open carry while allowing concealed carry as a matter of course is consistent with the Nation's historical tradition of regulating the manner of carrying firearms. The Motion, seeking to enjoin a rule that's likely on its way out the door,[4] should be denied.

## BACKGROUND

After learning about the Department's Rule, Plaintiff decided to drive from his home in Pascagoula, Mississippi to various Alabama State Parks to manufacture this challenge to the Rule. *See* Cason, *supra* note 3. He first visited the Gulf State Park Pier in Gulf Shores, Alabama. *See* Stabler Decl. ¶ 2; Pendergrass Decl. ¶ 2.

---

[3] This pleading failure is unsurprising given that Plaintiff is a Mississippi resident who specifically visited various Alabama State Parks to manufacture this lawsuit. *See* Mike Cason, *Federal lawsuit challenges restriction on firearms in Alabama state parks*, AL.COM (Oct. 21, 2022), https://www.al.com/news/2022/10/federal-lawsuit-challenges-restriction-on-firearms-in-alabama-state-parks.html. Plaintiff's statements in this article are party admissions and thus not hearsay, FED. R. EVID. 801(d)(2), and though the news article is itself hearsay, this Court can properly consider it at this stage of the proceedings, *see Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

[4] *See Proposed Amended Rule: 220-5-.08 Prohibited Devices*, 41 ALA. ADMIN. MONTHLY No. 2, Nov. 30, 2022 (available at http://www.alabamaadministrativecode.state.al.us/JCARR/JCARR-NOV-22/CON%20220-5-.08.pdf).

Upon arrival, Plaintiff interacted with Joan Stabler, the gate attendant at the Pier. Stabler Decl. ¶¶ 1–2. Plaintiff inquired about whether he could carry at the Pier. *Id.* ¶¶ 3–4. Ms. Stabler referred Plaintiff to Gulf State Pier Park Rules and Regulations #17, *id.* ¶ 3, which states that "No open carry of firearms, only concealed firearms are permitted - with park permit." *Pier*, ALA. STATE PARKS, https://www.alapark.com/parks/gulf-state-park/fishing-and-education-pier (last visited Dec. 2, 2022). Ms. Stabler did not understand Plaintiff to be asking for permission to concealed carry a handgun for self-defense, nor did she have the authority to grant Plaintiff permission to concealed carry had he asked. *Id.* ¶ 5.

Eventually, Lamar Pendergrass, the South Region Operations Supervisor in the Alabama State Parks Division of the Department, became aware of the incident. *See* Pendergrass Decl. ¶¶ 1–2. Mr. Pendergrass spoke to Plaintiff on the phone and told him about the Department's and Pier's rules regarding firearms. *Id.* ¶¶ 2–3. Mr. Pendergrass reaffirmed that Plaintiff was not permitted to open carry and told him that he could only concealed carry with a park permit or permission. *Id.* ¶ 3. Mr. Pendergrass too did not understand Plaintiff to be asking for permission to concealed carry firearms for self-defense; he thought Plaintiff was asking more generally what the policy was. *Id.* ¶ 4. Mr. Pendergrass did not prevent Plaintiff from concealed carrying a handgun for self-defense. *Id.* Indeed, had Plaintiff asked to do so, Mr. Pendergrass would have granted him permission and would have instructed all

4

employees under his supervision to do the same. *Id.* ¶ 5. In Mr. Pendergrass's 30 years with the Department, he can recall very few instances of people asking permission to carry a firearm at a State Park. *Id.* ¶ 6. Those people were usually law enforcement, and he can recall no instances where a person was denied permission to concealed carry a handgun for self-defense. *Id.*

Plaintiff moved on to Meaher State Park in Spanish Fort, Alabama. *See* Rickles Decl. ¶ 2. Park Manager Melanie Rickles observed Plaintiff at the Park recording videos and taking photographs. *Id.* Plaintiff then asked her why he could not open carry in the Park. *Id.* ¶ 3. Ms. Rickles directed Plaintiff to a sign showcasing the Park's rules and told him that he could not open carry. *Id.* Again, Ms. Rickles did not understand Plaintiff to be seeking permission, and she did not tell him that he could not concealed carry a handgun for self-defense. *Id.*

On November 17, 2022, the Department submitted a "Notice of Intended Action" to amend the Rule. *Supra* note 4. The proposed amendment (1) allows lawfully authorized persons to carry handguns *without permission*, (2) allows persons lodging at a State Park to possess long guns if they are at all times unloaded and secured, and (3) allows the Commissioner to designate locations where the possession of a firearm is prohibited. *Id.* On January 1, 2023, when Ala. Act No. 2022-133 goes into effect, the Department's firearms policy will mirror that of this proposed amended Rule. "Permit-less and permission-less carrying of handguns for self-defense—open

or concealed—will be permitted under the Proposed Rule." Lein Decl. ¶ 6. The notice-and-comment period will end on January 9, 2023, *id.*, and the Department anticipates that the amended Rule would go into effect on March 17, 2023.

Plaintiff filed suit against Christopher M. Blankenship, in his official capacity as Commissioner of the Department of Conservation and Natural Resources, and Steve Marshall, in his official capacity as Attorney General of the State of Alabama, on October 17, 2022. *See* Doc. 1. Plaintiff alleges that Ala. Admin. Code r. 220-5-.08(1) violates his Second Amendment rights. *Id.* ¶¶ 5, 6. After receiving an extension, *see* Doc. 13, Defendants filed their Answer on November 21, 2022, *see* Doc. 14. On the same day, Defendants filed a Motion to Stay Rule 26 Obligations in light of the Department submitting the proposed amendment to the Rule, which would render discovery on Plaintiff's claim for prospective injunctive relief as to the current Rule irrelevant. *See* Doc. 15. On November 30, 2022, Plaintiff filed his Opposition to the Motion to Stay, *see* Doc. 20, and filed a Motion for Temporary Injunction, *see* Doc. 19.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). Indeed, a preliminary injunction is "the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (citation omitted). Thus, "[t]he preliminary injunction is

an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites. The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1286 (11th Cir. 1990) (internal quotation marks omitted).

Those four prerequisites are: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public inter-est will not be disserved by grant of a preliminary injunction." *Id.* at 1285 (citation omitted). "[W]here the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest." *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (citation omitted).

Where, as here, a preliminary injunction is sought to *change* the status quo, it becomes a "mandatory or affirmative injunction[,]" and the burden on the moving party increases. *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).[5] Thus, a mandatory injunction "'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.'"

---

[5] All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

*Id.* (quoting *Miami Beach Fed. Sav. & Loan Ass'n v. Callender*, 256 F.2d 410, 415 (5th Cir. 1958)); *see also Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

**ARGUMENT**

There are four reasons that independently warrant denial of Plaintiff's Motion. *First*, because Plaintiff failed to provide any admissible evidence supporting his Motion, he necessarily failed to carry his burden to show that the facts and law clearly favor him. *Second*, Plaintiff lacks standing to seek prospective injunctive relief because he makes no allegations about future injury. *Third*, Plaintiff fails to establish the three non-merits prerequisites for preliminary injunctive relief because he waited months to seek a preliminary injunction and barely addressed the balance of the equities. And *fourth*, his claim fails on the merits: the Rule's regulation of the manner of bearing arms does not "infringe" the right to bear arms and is consistent with the Nation's historical tradition of firearm regulation.

## I.   Plaintiff has failed to meet his burden to show that the facts and law are clearly in his favor.

Plaintiff has offered no admissible[6] evidence whatsoever supporting his Motion. His Motion does not even address the facts supporting his Second Amendment claim. Without evidence, Plaintiff cannot carry his burden to satisfy the four prerequisites for a preliminary injunction. *Cf. Siegel v. LePore*, 234 F.3d 1163, 1175 (11th Cir. 2000) (stating that "an undeveloped record . . . makes it harder for a plaintiff to meet his burden of proof" to warrant granting a preliminary injunction in a case where "only limited affidavits and a few documents were introduced into the record before the district court"). The Eleventh Circuit's caution in *Siegel* is more pronounced here where Plaintiff's complaint is unverified, *see* Doc. 1; *see also Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (explaining that a pleading can only be treated as evidence to consider on summary judgment if it is verified), and Plaintiff has no affidavits, declarations, or documents supporting his Motion. This evidentiary deficiency alone warrants denial of Plaintiff's Motion.

---

[6] Plaintiff presents one piece of inadmissible evidence from Mark W. Smith, a purported "recognized Second Amendment scholar and a member of the United States Supreme Court Bar." Doc. 19 at 2. As an initial matter, Plaintiff is using this out-of-court statement to prove that there are no Founding-era gun laws about public parks. *See* FED. R. EVID. 801. And Plaintiff is trying to back-door in expert testimony by tweet. Despite Plaintiff's contention that this statement was "in direct response to a news article[,]" *id.*, it wasn't. It was "in direct response" to a direct tweet (where the news article was linked) from an account by the name of @williammitchum4. Mark W. Smith (@fourboxesdiner), TWITTER (Oct. 23, 2022 11:29 P.M.), https://mobile.twitter.com/fourboxes diner/status/1584401672004022273.

**II.   Plaintiff lacks standing to obtain prospective injunctive relief because he has not shown a threat of future injury.**

To prove standing, a plaintiff must show three elements: (1) injury in fact, (2) traceability, and (3) redressability. *Exhibitors Poster Exch.*, 441 F.2d at 560–61. An injury in fact must be both "concrete and particularized" and "actual or imminent." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (citation omitted). "The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). Not only must a plaintiff show past injury; "[b]ecause injunctions regulate future conduct," he must also "show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Id.* at 1328–29 (quotation marks omitted) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). "[A] party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Id.* (internal quotation marks and citation omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

Despite seeking an injunction, *see* Doc. 1 ¶ 6, Plaintiff makes no attempt to plead or argue that there is a real and immediate threat of future injury *as to him*.

Without ever showing that he intends to visit Alabama State Parks in the future, Plaintiff cannot establish a sufficient likelihood that the Rule will affect him in the future at all. This lawsuit is a hypothetical. Plaintiff visited the Pier and Meaher to find someone to tell him no—specifically to manufacture an "injury." *See* Cason, *supra* note 3. He even presents his lawsuit as a generalized grievance, *see* Doc. 18 ¶ 1 ("me and other ordinary law-abiding members of the public"); Doc. 19 at 4 ("myself and other ordinary law-abiding citizens who *may* wish to enjoy God's creation at public parks" (emphasis added)), which is insufficient to establish a particularized injury, *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). Plaintiff's lack of future injury prevents this Court from exercising jurisdiction over his request for injunctive relief.

### III.   Plaintiff has failed to show that the three non-merits prerequisites for a preliminary injunction are in his favor.

Plaintiff's Motion should also be denied because he cannot establish irreparable injury or that the balance of equities is clearly in his favor. For similar reasons to why Plaintiff lacks an injury in fact, Plaintiff cannot establish that he faces a likelihood of suffering irreparable harm without a preliminary injunction. He cannot establish likelihood of irreparable harm when there is no threat of future injury to begin with. Plaintiff's Motion does include a section titled "Irreputable [sic] Harm[,]" but this section does nothing more than stress the general importance of the right to bear

arms for self-defense.[7] Plaintiff's failure to establish an irreparable injury alone warrants denial of his Motion. *See Siegel*, 234 F.3d at 1176–77 (collecting cases).

What's more, Plaintiff waited over four months to file this Motion. This months-long delay weighs against a finding of the imminent, irreparable injury required to entitle him to a preliminary injunction. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.2d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a funding of irreparable harm."); *Thompson v. Merrill*, No. 2:16-CV-783-ECM, 2020 WL 3513497, at *4 (M.D. Ala. June 29, 2020) (holding that "Plaintiffs have failed to show imminent, irreparable injury" when they "inexplicably delayed filing their motion for preliminary injunction for over three months"). If Plaintiff can wait four months to seek preliminary injunctive relief, he can wait the less-than-a-month remaining until January 1, 2023,[8] when the Department will cease enforcing the permission language.

---

[7] Plaintiff mentions reports of a tragic murder at Cheaha State Park but neglects to mention that the victim reportedly possessed a firearm, which he used to defend himself and his girlfriend from their assailants. Carol Robinson, *'He is my hero': Florida student died protecting heartbroken girlfriend in robbery near Cheaha State Park*, AL.COM (Aug. 17, 2022), https://www.al.com/news/2022/08/he-is-my-hero-florida-student-died-protecting-heartbroken-girlfriend-in-robbery-near-cheaha-state-park.html.

[8] This date is not arbitrary—despite Plaintiff's claims otherwise, *see* Doc. 19 at 1. It's when the State's new firearms law, which eliminates the need for a permit to concealed carry, goes into effect. *See* ALA. ACT No. 2022-133 at 28 (Section 12). Because the Rule would not make sense under a regime where law-abiding citizens no longer need a permit to concealed carry and thus

Lastly, Plaintiff has barely attempted to address the last two prerequisites—the equities—let alone show that they are clearly in his favor. Plaintiff's Motion argues that the Second Amendment right is not a second-class right. But that argument falsely assumes that the Rule subverts the right to bear arms for self-defense to second-class status. Instead, the Rule expressly does not prohibit "the possession of handguns by lawfully licensed persons for personal protection." Even if Plaintiff isn't lawfully licensed, the evidence shows that had he sought permission to concealed carry a handgun for self-defense, the Department would have granted it. *See* Lein Decl. ¶ 3; Pendergrass Decl. ¶ 5. The hypothetical injury here is Plaintiff's ability to open carry, and he has not shown that such injury outweighs the damage that his proposed injunction would cause to the Department or that such an injunction is not adverse to the public (the State's) interest. *See* Lein Decl. ¶ 4 ("For the comfort of the children and families who frequent Alabama State Parks and to prevent conflict between user groups, permission is routinely denied in Alabama State Parks for open carry."). Plaintiff thus cannot establish the three non-merits prerequisites.

---

would not be "lawfully licensed," the Department's firearms policy will mirror that of the proposed amendment to the Rule (i.e., no permission will be needed to carry a handgun—open or concealed—for self-defense) after that date. *See* Lein Decl. ¶ 6.

## IV. The Rule's regulation of the manner of bearing arms is consistent with the Nation's historical tradition of firearm regulation.[9]

This Court should also deny Plaintiff's Motion because his Second Amendment claim fails on the merits. There are three steps to analyzing a Second Amendment challenge under *New York State Rifle & Pistol Association. v. Bruen*, 142 S. Ct. 2111, 2134–35 (2022). *See also United States v. Tilotta*, No. 3:19-cr-04768-GPC, 2022 WL 3924282 (S.D. Ca. 2022) (outlining the three steps). The first step requires the Court to precisely define the plaintiff's proposed course of conduct. *Bruen*, 142 S. Ct. at 2134. The next step is to determine whether the Second Amendment's "plain text" covers the proposed course of conduct. *See id.* Finally, if the text covers the proposed course of conduct, the government must show that the regulation "is consistent with our Nation's historical tradition of firearm regulation." *See id.* at 2135.

*First*, Plaintiff's proposed course of conduct is to visibly carry a firearm on public property—here, a state park. Any person with an Alabama concealed carry permit or a concealed carry permit in another state can concealed carry without permission under the Rule. *See* ALA. CODE § 13A-11-85(a); Lein Decl. ¶ 2. Unlike the plaintiffs in *Bruen*, who New York generally barred from carrying in *any* manner for general self-defense, 142 S. Ct. at 2125, Plaintiff has neither asked nor been

---

[9] What's at issue in Plaintiff's *federal* claim is the *current* Rule's compliance with the Second Amendment under the *Bruen* framework. What's *not* at issue is (1) the Department's compliance with State law because the Eleventh Amendment bars this Court from considering it, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), and (2) the proposed amended Rule's compliance with the Second Amendment because that potential claim is unripe.

denied permission to concealed carry, Stabler Decl. ¶ 5; Pendergrass Decl. ¶ 4; Rickles Decl. ¶ 4. Indeed, the Department routinely grants permission to those seeking to concealed carry a handgun for self-defense. Lein Decl. ¶ 3.[10] Because Plaintiff could have concealed carried had he asked, Plaintiff's true course of conduct is a novel right to openly carry a firearm on government property.

*Second*, turning to the Constitution's plain text, the Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. Assuming that Plaintiff falls within the plain meaning of "the People," *see United States v. Jimenez-Shilon*, 34 F.4th 1042, 1045 (11th Cir. 2022), he still has not shown that his right to "keep and bear arms" has been "infringed." The Second Amendment covers the right to carry in public, *Bruen*, 142 S.Ct. at 2134, but it does not create a right to visibly display a firearm on public property. The phrase "bear Arms" means to "wear, bear, or carry . . . upon the person or in the

---

[10] Thus, in practice, the Department's policy resembles a constitutionally permissible shall-issue regime. *See Bruen*, 142 S. Ct. at 2138 n.9 ("To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which a general desire for self-defense is sufficient to obtain a [permit]." (citation and internal quotation marks omitted)). And there are historical analogues for the permission requirement. *See, e.g.*, *1763-1775 N.J. Laws 346, An Act for the Preservation of Deer and Other Game, and to Prevent Trespassing with Guns, ch. 539, § 10*, DUKE CTR. FOR FIREARMS L., https://firearmslaw.duke.edu/jurisdictions/new-jersey/page/2/ (last visited Dec. 6, 2022); *1760 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred, to the Twentieth Day of March, One Thousand Eight Hundred and Ten Page 229, Image 288 (Vol. 1, 1810)*, DUKE CTR. FOR FIREARMS L., https://firearmslaw.duke.edu/laws/laws-of-the-commonwealth-of-pennsylvania-from-the-fourteenth-day-of-october-one-thousand-seven-hundred-to-the-twentieth-day-of-march-one-thousand-eight-hundred-and-ten-page-229-image-288-vol-1/ (last visited Dec. 6, 2022).

clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* (quoting *Heller*, 554 U.S. at 592). By allowing law-abiding citizens to wear, bear, and carry handguns concealed for self-defense in Alabama State Parks, the Rule does not "infringe" "[t]he constitutional right to bear arms in public for self-defense[.]" *Id.* at 2156. The bearer of arms must simply untuck his shirt to conceal the handgun for the benefit of other park patrons. *See* Lein Decl. ¶ 4. Because wearing a firearm visibly is not necessary to "bear arms," the Rule "in question does not *infringe* the right of the people to keep or bear arms. It . . . prohibit[s] only *a particular mode* of bearing arms . . . ." *Id.* at 2147 n.19 (first emphasis added) (quoting *State v. Jumel*, 13 La. 399, 399–40 (1858)).

*Third*, even if the Second Amendment covered Plaintiff's proposed course of conduct, the Department's regulation is consistent with this Nation's tradition of prescribing the manner in which citizens "bear" arms. Because a "historical twin" is unlikely to exist in early American history, the state need only provide a "well-established and representative historical analogue" to justify its regulation. *Id.* at 2133. Though the *Bruen* Court found "no historical basis for . . . broad prohibitions on all forms of public carry[,]" *id.* at 2145, the decision supports that there is such a historical basis for regulating the manner of bearing arms.

The Second Amendment affords the States wide latitude in prescribing the manner in which citizens carry firearms. *See id.* at 2162 (Kavanaugh, J., concurring) (explaining that history shows that the Second Amendment right "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" (quoting *McDonald v. Chicago*, 561 U.S. 742, 786 (2010))). *Bruen* itself recognized several such colonial statutes. *See id.* at 2145 (discussing colonial statutes in Massachusetts, New Hampshire, and New Jersey that prohibited "bearing arms in a way that spreads 'fear' or 'terror' among the people"). A 1792 North Carolina statute adopted from England stating that "no man except the King's servants" should "bring . . . force in affray of peace . . . nor ride armed by night nor by day, in fairs, markets nor in the presence of the King's Justices[,]" FRANCOIS XAVIER MARTIN, A COLLECTION OF STATUTES OF THE PARLIAMENT OF ENGLAND IN FORCE IN THE STATE OF NORTH CAROLINA 60–61 (1792), is another example of a colonial statute that prohibited the open display of arms. *See also 1786 Va. Laws 33, ch. 21, An Act forbidding and punishing Affrays.*, DUKE CTR. FOR FIREARMS L., https://firearmslaw.duke.edu/laws/1786-va-laws-33-ch-21-an-act-forbidding-and-punishing-affrays/ (last visited Dec. 6, 2022). "Throughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, *the manner*

*of carry*, or the exceptional circumstances under which one could not carry arms."
*Bruen*, 142 S. Ct. at 2138 (emphasis added).

Antebellum laws restricting concealed carry further confirm this tradition of
States specifying how a weapon may be carried. In 1840, the Alabama Supreme
Court upheld a contemporaneous Alabama law that prohibited "the evil practice of
carrying weapons secretly" while permitting open carry.[11] *State v. Reid*, 1 Ala. 612,
614 (1840) (internal quotation marks omitted);[12] *see also State v. Chandler*, 5 La.
489, 490 (1850) (upholding a similar law); *State v. Mitchell*, 3 Blackf. 229 (Ind.
1833) (same). *But see Bliss v. Commonwealth*, 12 Ky. 90 (1822) (holding that a law
outlawing concealed carry violated the state constitution). Likewise, the Supreme
Court of Georgia upheld an 1837 Georgia law that broadly prohibited "wearing" or
"carrying" pistols "as arms of offence or defence" insofar as the law prescribed how

---

[11] *But see Reid*, 1 Ala. at 619 ("[I]n order to test the correctness of its opinion, suppose one Legislature to prohibit the bearing arms secretly, and a subsequent Legislature to enact a law against bearing them openly; and then asks the question, whether the first or last enactment would be unconstitutional. Under the provision of our constitution, we incline to the opinion that the Legislature cannot inhibit the citizen from bearing arms openly[.]"). Notwithstanding this *sua sponte* advisory opinion, the Alabama Supreme Court premised its inclination on the proposition that concealed carrying was not efficient for self-defense. *See id.* This proposition is hardly true with modern handguns and in modern times where 2 in 3 of Americans who carried handguns always concealed carry. *See* Ali Rowhani-Rahbar et al., *Trend in Loaded Handgun Carrying Among Adult Handgun Owners in the United States, 2015–2019*, AM. PUB. HEALTH ASS'N (Nov. 16, 2022), https://ajph.aphapublications.org/doi/10.2105/AJPH.2022.307094.

[12] Consistent with *Bruen*, the Alabama Supreme Court reasoned that "the Constitution, in declaring that every citizen has the right to bear arms . . . has neither expressly nor by implication denied to the Legislature the right to enact laws in regard to the manner in which arms shall be borne." *Reid*, 1 Ala. at 616.

a weapon could be carried, rather than blanketly outlawed possession. *Nunn v. State*, 1 Ga. 243 (1846). "To summarize: The historical evidence from antebellum America does demonstrate that the manner of public carry was subject to reasonable regulation." *Bruen*, 142 S. Ct. at 2150.

\*      \*      \*

The Department is well within its authority to prescribe the manner in which Plaintiff carries a firearm at Alabama State Parks. By asking Plaintiff to untuck his shirt, the Rule does not infringe on his right to publicly carry for self-defense. Moreover, the regulation is consistent with both colonial statutes that outlawed carrying firearms in a manner that would frighten the public and antebellum laws that barred the concealed carry of handguns altogether. Because the Second Amendment does not cover Plaintiff's proposed conduct and the Rule is consistent with this Nation's history of prescribing the manner firearms are carried, Plaintiff is not substantially likely to succeed on the merits.

## CONCLUSION

This isn't a close call. Most simply, Plaintiff has failed to offer any admissible evidence to support his Motion for Temporary Injunction and has failed to even explain why he needs extraordinary preliminary relief. Even if Plaintiff could clear the evidentiary, jurisdictional, and equitable hurdles in his path, his Second Amendment claim cannot cross the merits finish line. *Bruen* makes clear that regulating the

manner of bearing arms is consistent with our Nation's historical tradition of firearm regulation. This Court should deny Plaintiff's Motion.

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ Benjamin M. Seiss
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

**Counsel for Defendants**

Charlanna W. Skaggs (ASB-6860-R62C)
  *General Counsel*

ALABAMA DEPARTMENT OF CONSERVATION AND
NATURAL RESOURCES
64 North Union Street, Room 474
Montgomery, Alabama 36130
Telephone: (334) 242-3165
Charlanna.skaggs@dcnr.alabama.gov

**Counsel for Commissioner Blankenship**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2022, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system and mailed a copy of same to

*pro se* Plaintiff at his address of record:

William Lee Mitchum
706 Enger St.
Pascagoula, MS 39581

s/ Benjamin M. Seiss
**Counsel for Defendants**